Good morning. I'm Andrew Wesley, and I represent the appellant Dale Fredericks in this appeal. With the Court's permission, I'd like to reserve any unused time for rebuttal. This is an appeal from an order dismissing the action for lack of diversity jurisdiction. The complaint alleges that at the time of filing, the appellant was domiciled in Nevada and that the defendants were either domiciliaries of either Missouri and or California, and therefore, diversity jurisdiction existed at the time of filing. It's possible just to get right to the issue. It seems to me you have a very heavy burden here in proving that the district court was purely erroneous, especially in light of the fact they found joint ownership of a home and bank accounts in California, the continued domicile of his wife and mother, the fact he kept his clothing, personal effects in California, the registration of his car in California, the fact the appellant was licensed to practice law in California and maintained a law office in San Francisco. Now, there's no doubt, Your Honor. How do you overcome that? There's no doubt that the clearly erroneous standard is a high standard, but it's not insurmountable. In fact, in Silver v. Executive Car Leasing Disability Plan reported at 466 F. 3rd, 727, this Court overruled as clearly erroneous a district court's finding of disabled status, a clearly factual finding. In fact, Judge Callahan, you sat on that panel. And we submit that the overwhelming objective evidence in this case supports a finding that Mr. Fredericks was domiciled in Nevada at the time of filing. I'll concede to you that there's more evidence in this case of him being in Nevada or Nevada. We say Nevada here. Then, you know, we see a lot of cases where no one seems to care about jurisdiction and there's basically nothing that supports that the person's there. But here, he does have a lot of evidence. But I guess what I'm struggling with is let's say the court just didn't believe him on certain of those things. You know, how do we get past whatever we have to be deferential to? Certainly. This Court has held repeatedly that although a finding by a trial court regarding credibility is ordinarily the kind of finding to which the court would defer on review, a credibility finding unsupported by the record is clearly erroneous. And citations to that include Torres v. Prunty at 223 F 3rd, 1103, as well as the Green and Avila cases cited at 232 F 3rd, 678, and 297 F 3rd at 921, respectively. In fact, the record ---- But those cases is unsupported by the record. Well, the district court in its decision on page 7 of the decision, ER 84, specifically says that in its finding of credibility, quote, Further at the hearing, Fredericks asserted that he thought the court would prefer copies of the most recent documents rather than those covering June 29, 2000, which was the date of filing. And the court goes on to say it's surprising that Fredericks, as an attorney, did not know that the pivotal moment in determining citizenship was the date of filing. And that was the basis for finding against him on credibility. But the record is replete with inquiries by the district court as to residents significantly prior to the filing date. And so when Mr. Fredericks bought those documents in 2001, a credibility finding would be unsupported by the record. There were documents in discussion regarding his residence significantly prior to the filing date and rationally ---- He did have a lot of evidence. I agree with you on that. And if the court had found that he was a Nevada resident, the other side would be climbing a very steep hill. What about the ---- The court applied a presumption that spouses lived together. What is your interpretation of that presumption, and what is that presumption? The district court did apply a presumption in favor of spousal domicile. And the court cited to the Lew v. Moss case, which both sides discussed in great detail in their briefs. But that case never did find that there was a presumption in favor of spousal domicile. And, in fact, we've been unable to find any Ninth Circuit case, and appellees don't cite either in their briefs any authority from this circuit in favor of such a presumption. Judge Nelson, you raised the question of the homeowner tax exemption. And certainly there was testimony, and it's undisputed that there was a tax exemption given on that home. But that tax exemption is available if either of the spouses reside in the home as their principal place of residence. And it's uncontroverted. There was no contrary evidence introduced to contradict the fact that Mrs. Fredericks  The tax exemption to a dwelling is allowed, quote, when occupied by an owner at his principal residence. And we must say it's his or her, right? So it's either Mr. Fredericks or Mrs. Fredericks who lives in the California house as a principal place of residence. And they are married, right? That's correct. And we submit that the they're not even separated. That's true. Mr. Fredericks did testify extensively about the reasons why he and his wife were not residing in the same home in Nevada. She was taking care of her ill mother, and that was a substantial reason. All reasonable inferences have to be drawn in favor of the nonmoving party. That's a clear rule in the Ninth Circuit. And we submit that the record is replete with every ruling against Mr. Fredericks just based on the fact that he was found not to be credible because he brought documents substantially after the filing date. In fact, the testimony at the hearing, which is included at ER 53, specifically is as follows. In the deposition, you answered a lot of questions about June 29, 2000, but you asked what the relevance was of that date. Have you had any occasion to think about the relevance of that date since then? Answer, not really, just to gather up what documents I had on short notice here and bring today. Mr. Fredericks gathered up all of his documents. He brought them to the hearing. They included 1999 tax returns, which were filed in the year 2000, close in time to the filing date of this lawsuit. They show his Nevada residence. He brought his driver's license, showing his Nevada residence. He gathered a whole host of documents from 2001, but certainly the conclusion that he's not a credible witness because he brought significant amounts of documents after the filing date doesn't find support in the record. And we submit that based upon all of those inferences drawn against him, a presumption in favor of spousal domicile, which doesn't exist in this circuit, misinterpretation of the availability of the homeowner tax exemption, and a misreading of Nevada law as far as the driver's license adds up to a clearly erroneous finding. All right. Thank you. Do you want to reserve the balance? Yes, Your Honor. Thank you. Good morning, Your Honors. Good morning. I'm Rhonda Smith. I'm with Kansas City Missouri. Thank you so much. I have with me at council table David Phillips and behind me Jessica McGregor representing Mr. Johnson. She will not be arguing. I have the fortune of carrying the argument for everyone. Thank you so much. I think the bread and butter question here is whether we're going to apply Anderson v. Bessemer City and provide this district court her due deference for the credibility and factual findings that are made. I don't think there is any condition or problem with respect to the underlying decision regarding the, quote, presumption regarding spouses. Let me just interrupt here, counsel. For me, this is a close case because the district court judge committed several errors in his analysis, finding that the Frederick's built the home in 1999 rather than 1989. He said there was presumption in favor of finding spouses to be domiciled in the same location. There doesn't appear to be case support for that. And then that Frederick's had to obtain a Nevada driver's license to vote. I mean, all of those things didn't seem to be true. Now, the standard of review is clearly erroneous. He cited a lot of things that might supply evidence. How do you weigh and balance? Well, I think the most important issue that you raise is the issue of what do you do when married people live apart. And there is no question that under Federal common law, one of the very important factors to be considered is if the people are married, where do they live and where does their family live. Luby Moss specifically included that as one of the bases, and as have every other decision that I know of. Where do the family folks reside? And Luby Moss specifically characterized the idea of a presumption in two different ways, the burden of producing evidence and the burden of proof. And when I look at this, I think that the district court judge, Judge Patel, did, in fact, correctly require Mr. Frederick's to come forward with proof, documentation, to show why, in fact, he wasn't living with his wife. Well, it is closer than a lot of cases, though, because he does have a lot of evidence in Nevada. And it is 2007. It is not, you know, the 1900s where men and women never lived apart. And he does give, you know, he does present a lot of evidence. And the question is, if the court bases its credibility call on evidence that really doesn't go to credibility, then that would be a problem. If the presumption is incorrectly applied, then, you know, how do we, you know, how do we know? I agree with you. It would be a problem if there was an inappropriate application of the presumption. But Luby Moss says it is appropriate to look at where the family and the spouse resides. And the question is, okay, so if you're going to look at it, who has to bring forward the documents and the evidence to show whether they reside together, and if not, why not? And that's the burden of production presumption that Luby Moss delineated. And I think that is the way that Judge Patel was applying that portion of the presumption. And the alternative is, I think, the reason that we do it this way. Otherwise, we, as the defendants, would have the burden to go out and inquire of Mrs. Fredericks why she wasn't living with her husband and subject that non-party to extensive invasive discovery, putting the burden on the party saying, I don't live with my wife, she has a domicile elsewhere, to show why that's true and to convince the court that it's true, I think is the appropriate way to apply that burden of production. Well, let's say if I look at the evidence right now and it looks pretty even to me, the fact that I'm not seeing the witnesses, that I'm not taking the evidence and all of that, do you then win? I believe I do, yes, under Anderson v. Bessemer, because clearly she did not believe this man. She did not believe him on more than one issue. She didn't believe that he didn't understand that he had to prove his citizenship in Nevada on June 29. She didn't believe that he had left his wife and his sick wife and his sick mother at home in California. She didn't believe that he was engaged in only voting in Nevada because he retained his California voter registration. And you have to understand in the context of this, here is an individual who was evasive at his deposition, wouldn't answer complete questions, and then produced documents at the hearing. And producing a hearing. Did the district court judge make any findings explaining the basis for her not believing Fredericks? I believe they're in two respects. I believe that she did not believe him when he didn't. I'm sorry? I'll rephrase it. Okay. Not what you think she did, but what she said. The genuineness. Did she make any findings saying, I do not believe him because his demeanor is oily and unconfident? I believe the genuineness comment that she made is her reflection of it. Where was that? That was in her decision at. Are you looking at the memorandum in order? Yes. I think pages 6, pages 7. No. At the bottom of page 7, which is 84 and 85. He's elusive at his deposition. And accordingly, at line 2 on 85, accordingly, the court questions Fredericks' genuineness. And that is with respect to what he understood as his burden of production. He was. Line 2 on page 8 of the opinion, which is at 85 of the excerpt. Yes. This is talking about him not understanding the date that he had to show his citizenship in Nevada, after he had his deposition taken where he had been as much as possible asked about June 29, 2000. And then he still comes to the hearing and presents documents which are only either before or after this relevant time period and do not change the matter one way or the other. And, Your Honor, she actually gave him another 30 days in which to come forward with evidence that would be related to the decisive date. Was the deposition taken in the presence of Judge Patel or simply reported and provided to her? It was reported. And she was reading the transcript. So he was not in as good a position to evaluate his elusiveness on these issues as was Judge Patel. That's correct. However, he was testifying in the same manner before her. And she doesn't say why. She does not say why. She said he was elusive at his deposition, not he was elusive in court. Correct. I do think, though, when you look at the statement regarding the – when she said he didn't come forward with enough evidence to meet the burden of production of why he wasn't living with his spouse, she was not convinced by his evidence. And whether that's a credibility determination or simply a failure of proof, it comes to the same result, that Mr. Fredericks was not believable in his reason for not being with his sick spouse. We can agree that there was nothing in the decision which said that, whilst testifying before me, he seemed not credible. She talks about the deposition. She talks about he would prefer – it was surprising that he would prefer copies of the most recent documents rather than those covering the date of filing the action. She says, as an attorney, it is surprising. So those are all things which we can evaluate as well as could Judge Patel, right? I would tend to disagree, Your Honor. I believe that hearing him say those words, that he didn't have an understanding of – Because she says, further, at the hearing, Frederick's asserted that he thought the court would prefer. Right. Well, I guess what I wonder sometimes is, you know, having been a trial judge, because credibility is different in person, but I have to believe there would be some instance where if I just said, okay, I don't believe someone, but there was tons of evidence that indicated that – I mean, there was no basis for someone not believing someone, that there could be some instance where you could climb up that hill and overcome it. And I'm – you know, are you saying that if a trial judge says, I don't believe someone, you can never overcome that? Oh, no. No, no. I absolutely agree. But, you know, the chart that the appellant put in his brief that showed some Nevada issues completely ignored other evidence. This man wasn't even able to testify that he was in Nevada on the date that he claimed to be a Nevada resident and filed his lawsuit. He had complete ability to bring that evidence before the Court. He was the only one who could. He did not. And otherwise, we have a dual tracts of residency. He had real estate and personal property in Nevada, also in California. Voting registration in Nevada, also in California. It's not so odd that a Nevadan would be in San Francisco the day the action was filed. I'm sorry? It wouldn't be very odd for a Nevadan to be in San Francisco the day the action was filed. Absolutely. But he did not testify that he was there more than he was in California. And he did not testify that he was even there on the day that it was filed. He, you know, he tries to suggest that his daughter was not in California, but his daughter was in California. That's in the record. His California bar is his only bar admission. That organization is conveniently omitted as being one of the affiliations with California. All right. Your time is up, unless any of the panel members have additional questions. Unless I'm going to call the time. All right. Thank you. I'd like to just address. Counsel, let me ask you a question. We have a rule as to what is clear error in this circuit. And it's described very graphically. To be clearly erroneous, the decision must strike us as more than just maybe or probably wrong. It must strike us as wrong with a force of a five-week-old unrefrigerated dead fish. Now, applying that rule, what about Judge Patel's decision as a dead fish? I do want to note at the outset that Your Honor, I think, is referring to the Hayes against Woodford decision where that comment comes from. But that decision was vacated when on-bank review was granted. And in fact, the three-judge panel opinion specifically states that it, I'm sorry, the on-bank decision specifically says that the three-judge panel opinion shall not be cited as precedent. But granted, it's a tough standard. It's a tough standard on appeal. And we submit that every reasonable presumption was construed against Mr. Fredericks. This domicile of Mr. Fredericks' wife seems to have overtaken the court in a sideways direction. And interestingly, the testimony at the hearing before the district judge, which begins at the very bottom of ER 33, Ms. Smiley herself questioned Mr. Fredericks and says specifically. Now, let's turn to Lafayette. That's California. As I understand your testimony, you said your wife in 1999, because of her illness, was not interested in joining you in a shift of domicile to Nevada. Is that a fair summary? Mr. Fredericks says that's correct. Is this illness particularly debilitating? Mr. Fredericks says painful and debilitating. And it goes on and on. And finally, it concludes with Mr. Fredericks specifically saying that she has often said she's anxious to sell the house in Lafayette, but we may want to wait until our children settle down in a particular place. Most compellingly, he says, she does not intend to stay in the house in Lafayette. So I suspect it's a matter of ---- Let me interrupt you. Your time is up. But I did want to ask you a question about your brief. In your brief, you seem to indicate that your burden of proof was just a burden of production to withstand Directed Verdi. But isn't your burden under Lew v. Moss, you have to prove by a preponderance of the evidence that he was domiciled in Nevada? That's true. So was that a misstatement in your brief? To the extent that there was any other burden that was cited in my brief, I apologize to the Court. The burden is my burden. I just wanted to clarify it. Thank you. Yes. All right. I think your time is up. So this matter will now stand submitted. Thank you both for your argument. Thank you.
judges: D.W. Nelson, Callahan, Bea